William T. JULIANO, on Behalf of himself as well as the United States of America, Qui Tam Plaintiff and Plaintiff,

v.

The FEDERAL ASSET DISPOSITION ASSOCIATION ("FADA"), et al., Defendants.

Civ. A. No. 89-0974-OG.

United States District Court, District of Columbia.

May 4, 1990.

---

James L. Marketos, Lane & Mittendorf, Washington, D.C., for Qui Tam plaintiff and plaintiff.

Alan E. Kleinburd, U.S. Dept. of Justice, Washington, D.C., Jay B. Stephens, U.S. Atty., John D. Bates and William J. Dempster, Asst. U.S. Attys. and Michael F. Hertz and Howard L. Sribnick, U.S. Dept. of Justice, Washington, D.C., on the briefs, for the U.S.

### MEMORANDUM

GASCH, District Judge.

This lawsuit was filed by William Juliano on behalf of himself and the United States pursuant to the False Claims Act ("Act"), 31 U.S.C. § 3729 *et seq.* The Act allows the government to recover funds, civil penalties, and treble damages against those who knowingly present false or fraudulent claims to the federal government for payment or approval. William Juliano, the qui tam plaintiff, seeks a judgment against defendants to recover, for the benefit of the United States and himself, damages of more than $75 million (before trebling), plus civil penalties and attorneys' fees. Complaint ¶ 1. Defendants are the Federal Asset Disposition Association ("FADA"), seven members of its Board of Directors, five of its officers or employees, four contractors who did business with FADA, and "John Does 1–1000," who signify various other FADA directors, officers, employees, or agents who are alleged to have "unlawfully benefitted from false or fraudulent claims made through and by FADA against United States Government funds."

The complaint was filed in camera and under seal, as the law requires, and copies were served upon the Attorney General and United States Attorney for this District. Approximately four months later, as the law allows, the United States filed a notice that it declined to take over the action as to some defendants, and it moved to dismiss the others. Specifically, the United States moved to dismiss FADA and seven of its directors. Juliano, the qui tam plaintiff, opposes that motion, which is now before the Court.

### I. *Background*

#### A. Statutory Framework

The term "qui tam" comes from the Latin phrase "qui tam pro domino rege quam pro se ipso in hac parte sequitur," which means "who brings the action for the king as well as for himself."[1] The False Claims Act, 31 U.S.C. § 3729 *et seq.*, was amended in 1986 to give private individuals ("qui tam plaintiffs" or "relators") greater incentives to sue, on the United States' behalf, those who knowingly file false claims against the federal treasury. The 1986 amendments provide for treble damages, awards to the qui tam plaintiff of up to 30% of the proceeds recovered, and reimbursement for reasonable attorneys' fees, expenses, and costs.

---

1. *The Private War on Pentagon Fraud,* 76 ABA Journal 46, 47 (Mar. 1990).

Procedurally, the law requires the following. The qui tam plaintiff must bring the action in the name of the government. The complaint, along with "written disclosure of substantially all material evidence and information the person possesses," must be served on the government, which has at least 60 days to decide whether or not to take over the action.[2] A copy of the complaint must be filed in camera with the Court and remain under seal for at least 60 days. The complaint may not be served on the defendant until the court so orders. In that event, the complaint is unsealed and served upon the defendant, who is given 20 days to respond. *Id.* §§ 3730(b)(1), (b)(2), (b)(3).

If the government chooses to proceed with the action, it has the primary responsibility for prosecuting the action, although the qui tam plaintiff has the right to continue as a party. *Id.* §§ 3730(b)(4), (c)(1). The qui tam plaintiff still retains the right to receive from 15% to 25% of the recovery from the action or settlement of the claim. *Id.* § 3730(d)(1). If the government declines to take over the action, "the person bringing the action shall have the right to conduct the action," and no person other than the government may intervene or bring a related action based on the same underlying facts. *Id.* §§ 3730(b)(4), (b)(5). Moreover, if the government declines to take over, the qui tam plaintiff is entitled to receive up to 30% of the proceeds recovered, along with attorneys' fees, expenses, and costs. *Id.* § 3730(d)(2).

### B. The Facts

On November 1, 1985, FADA was chartered as a federal savings and loan institution ("S & L") by the Federal Savings and Loan Insurance Corporation ("FSLIC"), an instrumentality of the United States.[3]

FADA was chartered pursuant to § 406 of the Federal Housing Act, 12 U.S.C. § 1729. FADA was established for the purpose of assisting FSLIC in the management and disposition of assets acquired from the failing S & L's, which from 1983 to 1985 had failed at an accelerating pace. When established, FSLIC provided FADA with $25 million in exchange for all of FADA's stock. It also provided FADA with a $50 million line of credit with the Federal Home Loan Bank in Topeka, Kansas. FSLIC appointed all of FADA's directors, and all profits earned by FADA were the property of FSLIC. In short, FADA was owned and controlled by FSLIC, a government agency.

On August 10, 1989, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, was signed into law. The new law abolished FSLIC and transferred its assets to a fund under the auspices of the Federal Deposit Insurance Company ("FDIC"). The new law also created the Resolution Trust Corporation ("RTC"), an agency of the United States, which was created for the purpose of liquidating FADA within 180 days and managing FADA in the interim.

The complaint in this case alleges that FADA was "unlawfully funded" and created without the approval of Congress, that it conducted its activities unlawfully, that it paid excessive salaries to its employees in violation of several federal laws, that it made false claims against FSLIC for supposed expenses, and that its employees, agents, and subcontractors submitted false claims for reimbursement to be paid by FADA from government funds. Qui tam plaintiff, a New Jersey real estate developer who tried, without success, to purchase FSLIC-owned properties that were under FADA's control, points out that his peti-

---

**2.** The government is entitled to extensions of time in which to make its decision. In this case, the government took approximately 120 days to file its notice not to proceed against certain defendants and its motion to dismiss the others—in part because qui tam plaintiff did not initially provide the government with all material evidence and information substantiating the complaint. *See* 31 U.S.C. § 3730(b)(2).

**3.** FSLIC was operated by the Federal Home Loan Bank Board ("Board"), which was established by the Federal Home Loan Bank Act, 12 U.S.C. § 1421 *et seq.* The Board was an independent agency in the executive branch which supervised and regulated savings institutions that specialize in the financing of real estate. *See id.* § 1437.

tions and grievances concerning FADA assisted Congress in investigating and ultimately abolishing FADA's operations. *See* House Comm. on Banking, Finance and Urban Affairs, *Federal Asset Disposition Association: Report of an Inquiry Into Its Operations and Performance* (Mar. 17, 1988), *reprinted in* 134 Cong.Rec. 2203 (Apr. 20, 1988), attached at Exhibit A to Complaint.[4] Qui tam plaintiff filed this action under the False Claims Act to recover for the United States the illegal payments alleged above.

## II. *Discussion*

■ As a threshold matter, qui tam plaintiff argues that the United States' motion to dismiss FADA and its seven named directors is procedurally improper. He argues that the qui tam provisions of the False Claims Act do not contemplate such "partial" government involvement. In his view, the United States must take over or decline to take over the *entire action*—as set forth in the qui tam complaint—but may not proceed in a "hybrid" fashion by declining to proceed against certain defendants and moving to dismiss the others.

The Court rejects this argument. The Act explicitly states: "The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). Although this section, by its placement in the statute, appears to pertain to actions in which the government has already intervened, that distinction is not crucial. The controlling point is that to construe the statute as qui tam plaintiff insists would raise serious constitutional questions. Under our federal scheme, the Attorney General, through those acting in his name, decides whom to prosecute for violations of federal law. The Court will not assume that the qui tam provisions of the False Claims Act were

intended to curtail the prosecutorial discretion of the Attorney General. The Act nowhere states that federal prosecutors are confined to proceed in an all or nothing manner, being forced to take or leave the qui tam plaintiff's charges wholesale. Nor does the Act state that the qui tam plaintiff remains free to prosecute any person or entity he wishes, provided the government declines to take over the action. With these considerations in mind, the Court concludes that the government's motion to dismiss certain named defendants is entirely proper.

In this motion to dismiss, the United States makes two arguments. First, it argues that the qui tam plaintiff cannot maintain this suit against FADA because FADA was (and its successor RTC is) a federal agency, and a suit by the United States against one of its agencies for money damages does not meet the case or controversy requirement of Article III. Second, it argues that the seven individual FADA directors should also be dismissed because it is apparent that they are being sued only in their official, not individual, capacities. Finding these arguments valid, the Court grants the United States' motion to dismiss.

## A. The Case or Controversy Requirement

■ The government argues that this action against FADA amounts to an action by the United States against the United States, thereby presenting no justiciable case or controversy. As the government points out, any judgment against FADA ultimately would be paid out of the federal treasury. FADA's assets and liabilities were transferred to the RTC, a federal agency, for the purpose of liquidation. Any excess after liquidation will be turned over to the federal treasury. Declaration of Thomas Bahlo, at ¶ 5. Thus, there being no "real, substantial controversy between parties having adverse legal interests,"

---

4. Mr. Juliano is mentioned at several points in the House Report. *See* 134 Cong.Rec. 2218, 2237–39. Proceeding in his own name, Mr. Juliano has also filed a 22–count antitrust and RICO complaint against FADA and others in the

United States District Court for the District of New Jersey. *William T. Juliano v. Federal Asset Disposition Ass'n, et al.* (D.N.J., filed April 5, 1989), attached at Exhibit C to Complaint.

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 299, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979), defendants request that FADA be dismissed.

In opposing this request, qui tam plaintiff makes a two-pronged argument. First, he argues that the position of the United States as a treble-damage judgment creditor of FADA under the False Claims Act would be "far superior to the position of the United States as a mere equity claimant." Specifically, he states:

> This is not a case in which recovery simply comes out of the right pocket and goes into the left of the same suit; to the contrary, this recovery gets magnified, comes out of various, competing-interest pockets, and goes to the pockets of a different suit altogether. The fact that various agencies of the United States have various interests in the pockets being depleted and in the pockets being augmented does not by any means indicate that judicial review of those interests and the contended-for results is any the less unnecessary or academic.

Pl.Mem. at 8–9.

The government concedes that it does not understand this contention. Gov't Reply Mem. at 4. Neither does the Court. It is clear beyond contention that any monetary recovery to the "United States" through a lawsuit against FADA would indeed empty one agency pocket to augment another of the same suit. The Court fails to see how such a redistribution of funds within the federal government creates the requisite case or controversy to sustain qui tam plaintiff's claims.

Second, qui tam plaintiff points to several cases suggesting that there can be a justiciable case or controversy even when the federal government sues one of its own agencies. For example, in *United States v. Interstate Commerce Comm'n*, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949), the United States sought, and received, judicial review of an administrative ruling by one of its agencies. *See also United States v. Nixon*, 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974) (stating that the "mere assertion of a claim of an 'intra-

branch dispute,' without more, has never operated to defeat federal jurisdiction"); *United States v. Federal Maritime Comm'n*, 694 F.2d 793 (D.C.Cir.1982) (petition by United States for review of agency order).

For the purpose of this lawsuit, qui tam plaintiff's reliance on those cases is misplaced. Those cases did not involve actions by the federal government to recover a money judgment from itself. As a general principle, it has long been settled that "no person may sue himself.... [C]ourts only adjudicate justiciable controversies. They do not engage in the academic pastime of rendering judgments in favor of persons against themselves." *United States v. ICC*, 337 U.S. at 430, 69 S.Ct. at 1413. In this case, any "recovery" in favor of the United States and against FADA would be purely academic; plaintiff and defendant are one. It appears that the only person who would benefit by forcing such a transfer of millions of dollars from one government account to another would be qui tam plaintiff, who by law is entitled to share in the recovery.

The "typical" claim brought under the False Claims Act appears to involve the private contractor—the defense contractor, the construction contractor, the medical service provider—that provides services to the federal government or its agencies and subsequently submits false or fraudulent claims which are paid out of the federal treasury. *See, e.g., United States v. JT Constr. Co.*, 668 F.Supp. 592 (W.D.Tex. 1987) (construction contractor submitted inflated claims); *United States ex rel. Fahner v. Alaska*, 591 F.Supp. 794 (N.D.Ill. 1984) (optometrist filed false medicaid claims). The False Claims Act may also provide redress against one who fraudulently obtains a government loan. *See, e.g., United States v. Davis*, 809 F.2d 1509 (11th Cir.1987); *United States v. Ettrick Wood Products, Inc.*, 683 F.Supp. 1262 (W.D.Wis.1988). But this action brought by William Juliano is atypical. In fact, it appears to be entirely novel. The Court is aware of nothing in the Act that allows a private individual to sue selected federal

agencies to recover money from the United States for the benefit of the United States, and to reap a sizeable profit in the process. Qui tam plaintiff provides no precedent for such an expansion of the Act. For these reasons, the Court concludes that FADA should be dismissed.[5]

## B. FADA's Board of Directors

Among the individuals named as defendants are seven former members of FADA's Board of Directors. Although the complaint states that these seven are being sued "individually and as a member of the FADA Board of Directors," the complaint fails to allege any specific acts that would render them individually liable under the False Claims Act. The government argues that if FADA is dismissed, so too these named defendants should be dismissed, as it appears they are being sued solely in their official capacities.

■ Qui tam plaintiff does not effectively counter this argument. He appears to argue that since the 1986 amendments to the False Claims Act dispelled with a strict scienter requirement (defining "knowingly" to include those claims made "in reckless disregard" of their truth or falsity), the amendments probably also intended to dispense with the specific pleading requirements applicable to fraud claims. The Court finds no authority for this position and concludes that the complaint against the seven former board members should be dismissed.[6]

## C. The Remaining Defendants

The remaining defendants, which the government has not moved to dismiss, are: (1) Rosalyn Payne, FADA's President; (2) Korn/Ferry International, an executive search firm that FADA retained to locate its high level officers; (3) Robert Axley, FADA's Senior Vice President and General Counsel; (4) John Hatfield, an employee in FADA's Atlanta office; (5) Timothy Solomon, also an employee in FADA's Atlanta office; (6) Terranova Corporation ("Terranova"), which allegedly received numerous lucrative subcontracts with FADA; (7) Stephen Bittell, Terranova's owner; (8) Unimark Insurance Company ("Unimark"), a Texas concern that allegedly was awarded contracts with FADA without competitive bidding and was paid excessive monthly premiums; and (9) "John Does 1–1000," alleged to be "various other FADA directors, officers, employees, agents, attorneys, contractors and subcontractors who unlawfully benefitted from false or fraudulent claims made through and by FADA against United States Government funds." Complaint ¶¶ 10–15.

The government has filed notice that it does not intend to proceed against these defendants. By law, qui tam plaintiff retains the right to proceed against them. 31 U.S.C. § 3730(b)(4)(B). Thus, the Court will unseal this case and allow qui tam plaintiff to serve the complaint, as amended if necessary, upon the remaining defendants. *See id.* § 3730(b)(2). In accordance with the Act and the government's filed request, qui tam plaintiff shall continue to serve upon the government copies of all pleadings and other papers filed in this action, consistent with 31 U.S.C. § 3730(c)(3).

## ORDER

Upon consideration of the motion of the United States to dismiss defendants the

---

**5.** In its motion papers, the United States originally represented that any liabilities resulting from FADA's liquidation would be satisfied with federal treasury funds. *See* Bahlo Dec. ¶ 4. At oral argument, counsel for the United States informed the Court that this was a misstatement. Qui tam plaintiff makes much of this misstatement, apparently believing that it strengthens his view that FADA was only a "quasi" federal agency. For the purpose of establishing a case or controversy, however, Mr. Bahlo's misstatement is immaterial. The essential point is that FADA was a federally created and federally funded institution. Any recovery against FADA in this lawsuit would (1) be paid out of federal treasury funds, assuming FADA's assets exceed its liabilities, or (2) be nonrecoverable, should FADA's liabilities exceed its assets. Either way, there is no justiciable controversy between the United States and FADA under the False Claims Act.

**6.** These seven individuals are Edward Biron, Thomas Bomar, William McKenna, Gerald J. Levy, Barney R. Beeksma, W. W. McAllister III, and John B. Zellars.

Federal Asset Disposition Association and its seven named directors, qui tam plaintiff's opposition thereto, the arguments of counsel in open Court and the entire record herein, and for the reasons set forth in the accompanying Memorandum, it is by the Court this 4th day of May, 1990,

ORDERED that the United States' motion be, and hereby is, granted; and it is accordingly

ORDERED that defendants the Federal Asset Disposition Association ("FADA"), Edward Biron, Thomas Bomar, William McKenna, Gerald J. Levy, Barney R. Beeksma, W.W. McAllister III, and John B. Zellars be, and hereby are, dismissed from this action; and it is further

ORDERED that the complaint in this case be, and hereby is, unsealed; and it is further

ORDERED that qui tam plaintiff shall serve the complaint on the remaining defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure, as provided by 31 U.S.C. § 3730(b). In addition, qui tam plaintiff shall continue to serve upon the government copies of all pleadings and other papers filed in this action, consistent with 31 U.S.C. § 3730(c)(3).