### U.S. LEASING CORPORATION, Plaintiff,

v.

### RESOLUTION TRUST CORPORATION, Defendant.

#### Civ. A. No. 92–2849–LFO.

United States District Court, District of Columbia.

June 8, 1993.

Edward L. Genn, North Bethesda, M.D, for plaintiff.

Carlos M. Sandoval, Martinez and Sandoval, P.C., Arlington, VA, for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff, the U.S. Leasing Corporation, sues the Resolution Trust Corporation (RTC) for money allegedly due plaintiff from the now-liquidated Federal Asset Disposition Association (FADA) in payment for telephone leasing services. RTC is sued in its capacity as receiver for FADA.

RTC moves to dismiss the case on the ground that plaintiff, as a creditor of FADA, failed to file a timely claim with RTC pursuant to 12 U.S.C. § 1821(d)(3)(B). That section establishes a mandatory administrative claims process requiring claimants to submit a "Proof of Claim" or equivalent information to the RTC by a date certain after first publication of a notice to creditors. Because plaintiff failed to file the requisite claim, defendant argues, U.S. Leasing is prohibited from recovering.

Defendant also argues this court lacks subject matter jurisdiction because 12 U.S.C. § 1821(d)(13)(D)(i) bars federal jurisdiction over "any claim or action for payment from ... the assets of any depository institution for which the [RTC] has been appointed receiver," except as otherwise provided in that section. Courts have confirmed that the express language of § 1821(d)(13)(D) requires exhaustion of the administrative process before a federal claim may be entertained. See, e.g. RTC v. Mustang Partners, 946 F.2d 103 (10th Cir.1991).

Plaintiff does not dispute that the RTC administrative claims process is mandatory for the creditors of depository institutions for which RTC has been appointed receiver. Nor does U.S. Leasing allege it timely complied with the claims process in this case.[1] Instead, plaintiff contends that FADA was acting here as a federal agency and not as a private "depository institution," the creditors of which are required to comply with the administrative claims process or over which federal jurisdiction is prohibited.

Plaintiff relies primarily on *Juliano v. Federal Assets Disposition Association*, 736 F.Supp. 348 (D.D.C.1990), and *Alley v. RTC*, 984 F.2d 1201 (D.C.Cir.1993), for the proposition that FADA was a federal agency. Nei-

---

1. Plaintiff points to correspondence with RTC's predecessor, FADA, as evidence that RTC had notice of its claim, but does not dispute that it failed to file a timely administrative claim with RTC.

ther of these cases, however, establishes plaintiff's contention. In *Juliano*, the district court dismissed a *qui tam* action brought against FADA, finding that because the claim would require the federal government to recover money from itself, no actual case or controversy was presented. The court based its conclusion on the fact that "FADA was owned and controlled by [the Federal Savings and Loan Insurance Corporation (FSLIC)], a government agency." 736 F.Supp. at 350. Because "any judgment against FADA ultimately would be paid out of the federal treasury" back to the federal government, the court reasoned, no "real, substantial controversy" was presented. *Id.* at 351. The court's finding that "FADA was a federally created and federally funded institution," however, did not constitute a finding that FADA itself was a federal agency, as plaintiff attempts to suggest. *Id.* at 353 n. 5. The mere fact that FADA's stock was held by a federal agency does not establish that FADA itself was a federal agency excepted from the RTC claims process.[2]

Our court of appeals' decision in *Alley* supports this conclusion. The *Alley* court conceded that "one could argue long and hard" regarding FADA's ambiguous status as a federal or private entity.[3]

> For some purposes FADA might properly be characterized as an agency or instrumentality of the federal government. The roles FHLBB and FSLIC played in creating, supervising, and patronizing FADA gave FADA an undeniable public coloration. On the other hand, certain of FADA's features would not be found in a standard Field Guide to Governmental Entities: FADA's payment of federal and states taxes, for example, cuts strongly against public entity authorization.

*Id.* at 1205. For the purposes of the ERISA question under consideration, however, the court held that FADA, at least in its employment relations, "functioned not like a governmental agency, but like a private enterprise." FADA therefore was not subject to ERISA's statutory exemption for "governmental plans." *Id.* at 1206.

FADA's underlying statutory scheme also suggests that FADA should be treated like any other federal depository institution under RTC's receivership. FADA was chartered by the Federal Home Loan Bank Board under 12 U.S.C. § 1464, the statutory authority for the chartering of all federal savings and loans. FADA thus falls within the definition of a "depository institution" as defined by 12 U.S.C. § 1821(d)(3)(B)(i), which includes "any Federal savings association or savings bank which is chartered under section 1464 of this title." 12 U.S.C. § 1813(b)(2).[4]

Congress expressly created RTC "for the purpose of liquidating FADA within 180 days and managing FADA in the interim," pursuant to 12 U.S.C. § 1441a(b)(3)(B) and 1441a(f). *Juliano*, 736 F.Supp. at 350. RTC reasonably argues, therefore, that regardless whether FADA constituted a federal agency for other purposes, Congress considered FADA to fall within RTC's authority to "manage and resolve" depository institutions. RTC therefore is entitled to exercise over

---

**2.** As the question of FADA's status as a federal agency was neither actually contested by the parties in *Juliano* nor necessary to the result, the government is not collaterally estopped from arguing that FADA was not a federal agency for the purposes here. *See, e.g. Jack Faucett Assoc. Inc. v. American Telephone & Telegraph Co.*, 744 F.2d 118 (D.C.Cir.1984).

**3.** 984 F.2d at 1205 n. 11. The court noted that FADA had been established "as a federally chartered savings and loan association" to assist in the liquidation of assets acquired by FSLIC. "FSLIC owned all of FADA's stock, selected FADA's board of directors, and sent a representative to all FADA's board meetings." *Id.* at 1202. FSLIC also supplied FADA with $25 million in start up funds and a $50 million line of credit.

The purpose of FADA, however, was "to assist in strengthening the financial health of the FSLIC by using private sector management and marketing techniques." *Id.* at 1203. FADA's board members therefore were private individuals rather than federal employees; its employees were paid private sector salaries and were not subject to federal civil service laws, and FADA's income, derived from services fees charged to FSLIC and other clients, was subject to federal and state taxation.

**4.** The court also notes that the *Alley* court based its jurisdiction over the FADA claim on a "provision requiring that claims against depository institutions for which RTC is a receiver be brought in federal district court." 12 U.S.C. § 1821(d)(6)(A). *Alley*, 984 F.2d at 1204 n. 7.

FADA's creditors all its receivership powers under 12 U.S.C. § 1821(d)(2)(J)(i).[5] Moreover, because compliance with the mandatory administrative claims process is necessary for efficient processing of creditors' claims, RTC's reasonable interpretation of its powers is entitled to deference here. *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

In light of the above, FADA's creditors were required to comply with the normal mandatory administrative process for filing claims with RTC. Because plaintiff did not comply with this process, plaintiff is not entitled to relief and this court lacks jurisdiction to hear its claim.

---

**5.** It also is relevant to note that plaintiff's creditor relationship grew out of an ordinary tele-

phone services contract with FADA, rather than anything resembling "official business."