### B. Vandenberg HALL, Appellant,

### v.

### Anthony WILLIAMS, Appellee.

### No. 98–CV–9.

District of Columbia Court of Appeals.

Argued June 17, 1999.

Decided Sept. 9, 1999.

Clement Theodore Cooper, Washington, DC, for appellant.

---

Sheila Kaplan, Assistant Corporation Counsel, with whom John M. Ferren, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Appellant Hall entered into a contract with the Mayor of the District of Columbia in 1980 as authorized by the D.C. Revenue Recovery Act of 1977 ("the Act"), D.C.Code § 47–421 *et seq.* (1997). The contract provided that, if appellant produced information regarding District tax liability of the Estate of Lewis E. Smoot, appellant would receive ten percent of the net tax revenue actually collected by the District from that estate. In 1982, the Mayor, through his agent at the Department of Finance and Revenue, informed appellant that after an initial investigation the District had decided not to pursue the Smoot matter further because of "insufficient evidence to make a case against the Estate of Lewis E. Smoot for D.C. tax liability."

Discussions between the District Department of Finance and Revenue and appellant continued through 1996 as appellant attempted to renegotiate the contract. On August 15, 1998, appellant filed a claim for breach of contract, seeking special and general damages in excess of $3 million.

He alleged in essence that the District failed in an obligation to pursue the leads he had provided in the Smoot matter and otherwise take enforcement actions that would have produced substantial tax revenue.[1] The court granted the District's motion to dismiss the claim on each of four separate grounds[2] under Rule 12(b)(6) on December 11, 1997. Appellant timely appealed to this court.

A dismissal under Rule 12(b)(6) is reviewed by this court *de novo,* taking the plaintiff's allegations as true and making all necessary factual inferences favorable to the plaintiff. Nonetheless, if no set of facts would entitle the plaintiff to relief under the theory alleged in the complaint, then a 12(b)(6) dismissal shall be upheld. *Duncan v. Children's Nat'l Med. Ctr.,* 702 A.2d 207, 210 (D.C.1997). Because no valid claim for breach of contract exists under the complaint, we affirm the dismissal on that ground without reaching the other arguments made by the District.

## I.

A key provision of the Revenue Recovery Act of 1977, now D.C.Code § 47–421 *et seq.,* grants authorization to the Mayor "to make such monetary payments as he or she may deem suitable to any person or persons who furnish information leading to the collection" of taxes owing to the District. Such payments may not exceed ten percent of taxes actually collected and received by the District "as a result of the information furnished."[3] D.C.Code § 47–

---

1. The record does not contain a shred of support for appellant's weak and entirely belated suggestion that the District may in fact have collected some such taxes. The complaint itself in its detailed listings of the District's actions and inactions constituting alleged contract breaches gives no hint of such a claimed ground of breach.

2. The District argued that dismissal was warranted because (a) there was no breach of contract; (b) the court lacked jurisdiction to hear the claim; (c) Hall failed to exhaust administrative remedies; and (d) the statute of limitations had run.

3. As a further limitation, "[s]uch payments shall be based on the collection of taxes ... only for the periods and the types of taxes for which the information was provided" and no payments may be made until the expiration of all appeal periods. D.C.Code § 47–422. "Collection" is defined as "the actual receipt by or payment to the District of Columbia of a sum of money representing taxes, penalties, or interest ... which have been finally determined as being owed to the District or which has been paid pursuant to a settlement." D.C.Code § 47–421(1).

422. Furthermore, "[t]he determinations of the Mayor as to whether such payments shall be made and as to the amount thereof shall be final and conclusive and shall not be subject to review in any court." *Id.*

■ The ability of the Mayor to enter contracts like the one at issue here derives solely from a further provision of the Act that explicitly authorizes the Mayor to enter into contracts to pay for such information "subject to the provisions of this subchapter [the Act]." D.C.Code § 47–423. Thus, the contractual terms must reflect the limitations contained in the authorizing Act. As already indicated, they are severe. Payments cannot exceed ten per cent and can be made only out of tax moneys actually collected and finally determined to be properly owed. The information provided must itself lead to the collection of such tax moneys.[4] The Act further endows the Mayor with absolute discretion over whether to make such payments and how much they shall be, within the statutory limitations.[5] Moneys for such payments come from appropriated funds, D.C.Code § 47–304, Sec. 111 (Supp. 1999), and thus distributions must comply with the Home Rule Act requirement that "no amount may be obligated or expended by any officer or employee of the District of Columbia government unless such amount has been approved by Act of Congress, and then only according to such Act." D.C.Code § 47–304 (1997).

## II.

■ Appellant argues that these statutory requirements and limitations may be superseded by the contract. We cannot agree with any such broad assertion. The very authority upon which the contract is based makes clear that the contract is subject to the Act. Indeed, the contract itself in its "whereas" clauses acknowledges that it is made pursuant to the authority of the Act. That is not to say the contract is a meaningless document. By entering into the contract, for example, the Mayor committed himself to a specific payment figure of ten per cent of moneys "actually collected." We·think, however, that the contract terms must be interpreted against the background of the statutory limitations and, in particular, the sweeping discretion provided to the Mayor in its administration. Although the contract is silent regarding any obligation of the District to take action with respect to the information provided by appellant, appellant would have us read such a clause into the contract and permit the recovery of damages even though no tax moneys have actually been collected. We do not think this can be done consistent with the statutory scheme as described above.

Appellant's analogy between the Revenue Recovery Act and the Federal False Claims Act is inapposite, because under that statute individuals are able to independently pursue claims against those who have filed falsely against the government and received reimbursement.[6] The

---

4. We note the possible illegality of at least a portion of the contract in question, insofar as it includes a provision (paragraph 7) that specifically allows payment to appellant from collections from the Smoot estate regardless of whether such collections in fact stemmed from information given to the District by appellant.

5. We disagree with the District's argument that, because the Act prohibits judicial review of such discretionary payment decisions, we lack jurisdiction to decide this case. The claim is presented as a contract dispute, and while the Act may inform the terms of that contract, the courts have authority to decide

cases based on contracts made by the District. The District also refers us to a provision in one paragraph of the contract that "[i]n the case of a disagreement, the determinations of the Mayor shall be final and conclusive." But that language most naturally would be read as referring to disagreements over the interpretation of the paragraph in question, not to the contract as a whole.

6. In any event, comparison to the False Claims Act weighs against appellant on this score, as it has been held that the federal statute was not intended to limit the discretionary authority of federal prosecutors over which qui tam actions to pursue. *Juliano v.*

Revenue Recovery Act is more closely modeled on § 7623 of the Internal Revenue Code, which allows the Secretary to "pay such sums as he deems necessary for—(1) detecting underpayments of tax, and (2) detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same" subject to the constraint that such payments be made "from the proceeds of amounts (other than interest) collected by reason of the information provided." 26 U.S.C. § 7623 (1998). Cases under § 7623 state that the IRS has discretion over whether to reward an informant in a particular case, *see, e.g., Krug v. United States*, 41 Fed. Cl. 96 (1998), *aff'd*, 168 F.3d 1307(Fed.Cir.1999), but permit an enforcement by an informant of a negotiated contract when taxes are actually collected. *Merrick v. United States*, 846 F.2d 725 (Fed.Cir.1988).

In a recent case similar to the one at bar, an IRS informant claimed, among other things, that the government had breached an implied contractual covenant to collect the full amount of taxes owed. *Jarvis v. United States*, 43 Fed.Cl. 529 (1999). While the court acknowledged the IRS has a statutory obligation to enforce the tax laws, it refused to read any such obligation into the contract with the informant, because "implying an obligation to make enforcement decisions in view of an informant's expectations would impermissibly involve the court in the internal affairs and judgments of an executive agency." *Id.*

Examination of another analogous situation, that of the informant contracted to participate in a sting operation, also is instructive. It has long been the case that prosecutorial decisions are discretionary, and prosecutors have immunity in making such decisions. *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). Because "the prosecutorial function is concomitant with the investiga-tive function," that immunity extends to decisions about how and when to conduct investigations as well. *Garza v. United States*, 34 Fed.Cl. 1, 13 (1995). In *Howard v. United States*, 31 Fed.Cl. 297 (1994), the plaintiffs alleged that the Customs Service had breached its contract with them by aborting a planned sting. The court held that the contract under dispute included no duty to pursue the operation to completion because "a contract that places a government agency in such a situation violates public policy by removing investigative, and thus prosecutorial, discretion from the hands of the government and placing it in those of private citizens." *Id.* at 308.

In sum, we hold, looking both to the Revenue Recovery Act and the contract thereunder between appellant and the District, that the complaint stated no valid cause of action against the District and was therefore properly dismissed by the trial court.

*Affirmed.*

*Federal Asset Disposition Ass'n,* 736 F.Supp. 348, 351, *aff'd without op.,* 295 U.S.App. D.C. 97, 959 F.2d 1101 (1992).