UNITED STATES of America, ex rel., Appellant,

Max KILLINGSWORTH, Plaintiff–Appellee,

v.

NORTHROP CORPORATION, Defendant–Appellee.

No. 92–55863.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 1993.

Argued and Submitted on Petition for Rehearing March 14, 1994.

Opinion Filed Jan. 19, 1994.

Opinion Withdrawn May 23, 1994.

Filed May 23, 1994.

Brad D. Brian, Munger, Tolles & Olson, Los Angeles, CA, for defendant-appellee.

James M. Hagood, Denver, CO, for the amicus curiae.

Before: BROWNING, BRIGHT * and TANG, Circuit Judges.

Opinion by Senior Circuit Judge BRIGHT.

## ORDER

The petition for rehearing filed February 2, 1994, is granted. Upon hearing further oral argument and examining supplementary briefs and other materials, the prior opinion of this court filed January 19, 1994, is withdrawn. A revised opinion is attached to this order and is filed as the opinion of this court in this case.

## OPINION

BRIGHT, Senior Circuit Judge:

Max Killingsworth brought a *qui tam* action against the Northrop Corporation [Northrop], alleging it defrauded the United States by inflating cost estimates used to support MX missile contract proposals. During an extended course of litigation, the United States declined to exercise its right to intervene under §§ 3730(b)(2) and (c)(3) of the False Claims Act, 31 U.S.C. § 3730 [the Act]. Killingsworth and Northrop eventually agreed to a settlement, notified the United States, and moved to dismiss the action. The United States objected to the settlement but still declined to intervene in the proceedings. The district court ultimately dismissed the action without the consent of the United States. The United States then moved in the district court to intervene for purpose of appeal, seeking to challenge the stipulated dismissal. The district court denied the motion.

The United States brings this appeal, asserting the district court erred in dismissing this *qui tam* action without the consent of the Attorney General and in denying the

Douglas Letter, U.S. Dept. of Justice, Washington, DC, for appellant.

Max Killingsworth, pro se.

* Honorable Myron H. Bright, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

government the right to intervene on appeal. We reverse and remand this case for further proceedings consistent with this opinion.

## I.

In November of 1988, Max Killingsworth, a former employee of Northrop, filed this action against Northrop under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730. He alleged Northrop improperly inflated cost estimates supporting MX missile contract proposals. After investigating the allegations for almost eighteen months, the government informed Killingsworth it would not exercise its right under § 3730(b)(4)(A) of the Act to take over the litigation.

Northrop and Killingsworth agreed on a settlement of $500,000, but in May of 1990, the settlement fell through after a dispute over several issues, including fees for Killingsworth's attorneys. Killingsworth obtained new counsel and amended his complaint, adding additional claims, including one that Northrop wrongfully terminated his employment. In June of 1990, the district court entered an order which recognized the government's decision not to intervene and required that "the consent of the Attorney General ... be solicited before the granting of a dismissal, settlement, or other discontinuation of this action." (Order re Election by the United States Declining Intervention and the Unsealing of Complaint filed June 7, 1990, at 2.)

In December of 1991, Killingsworth and Northrop entered into another agreement to settle the case. The agreement provided that Northrop would pay $1 million for the False Claims Act claim and $3.2 million for Killingsworth's wrongful termination claim including attorneys' fees and costs. Northrop conditioned its participation in the agreement on the government's approval.

For several months, the government discussed the proposed settlement with Killingsworth and Northrop, expressing concern that the bulk of the settlement money would go to the wrongful termination claim. The government thought that the parties might have specifically structured the settlement so as to reduce the amount the government realized;

normally entitled to roughly seventy percent of any False Claims Act settlement under 31 U.S.C. § 3730(d)(2), the government would not receive any compensation from the wrongful termination claim. The government further asserted that Northrop failed to pursue a statute of limitations defense to the wrongful termination claim which could have shielded Northrop from liability on that claim.

On March 4, 1992, Killingsworth moved to have the district court approve the settlement and dismiss the case. On March 20, 1992, Northrop filed a statement of nonopposition. The government formally objected to the settlement on April 3, 1992, but still declined to intervene in the action.

Northrop and Killingsworth then reopened settlement discussions, and on April 16, 1992, agreed to shift $500,000 from the wrongful termination claim to the False Claims Act claim. In sum, Northrop would pay $1.5 million on the False Claims Act claim and $2.7 million on Killingsworth's wrongful termination claim and attorneys' fees. On April 20, the district court ordered the government to inform the parties whether it consented to the settlement and, if not, to file a motion seeking leave to intervene in the case.

On May 4, the government informed the district court it did not consent to the district court's dismissal of the action, but again declined to file a motion to intervene. On May 19, 1992, the district court entered its order of dismissal with prejudice, stating:

> [T]he Attorney General's consent to dismissal is not required in the present circumstances, and that the instant action is dismissed in its entirety with prejudice to both the *qui tam* plaintiff and the United States.

(Corrected Joint Stipulation of Dismissal; Proposed Order Thereon filed May 19, 1992, at 3.)

The government filed a motion seeking leave to intervene for purpose of appeal on May 21, 1992. The district court denied the motion without opinion on June 16, 1992. The government then filed this timely appeal from the district court's dismissal of the ac-

tion and denial of leave to intervene for purpose of appeal.

## II.

The government first contends the district court erred in denying as untimely its motion to intervene for purpose of appeal. It argues that under Fed.R.Civ.P. 24(a) and the Act, it has the right to intervene at this point in the action. Northrop and Killingsworth counter that the failure of the government to intervene in the action at any time prior to the district court's approval of the settlement leaves the parties free to carry out the terms of the settlement and move to dismiss the action.

■ We review de novo the district court's denial of the government's motion to intervene as a matter of right. *United States ex rel. McGough v. Covington Technologies Co.,* 967 F.2d 1391, 1393–94 (9th Cir.1992).

■ The government has attempted to intervene for purpose of appeal under Fed. R.Civ.P. 24(a), Intervention of Right. This court recently permitted intervention under somewhat similar circumstances in *McGough.* In our opinion, *McGough* also controls here and we conclude the government may intervene for purpose of appeal.

In determining whether a party may intervene as of right under Fed.R.Civ.P. 24(a), we apply a four-part test inquiring whether:

(1) the applicant's motion is timely;

(2) the applicant has asserted an interest relating to the property or transaction which is the subject of the action;

(3) the applicant is so situated that without intervention the disposition may, as a practical matter, impair or impede its ability to protect that interest; and

(4) the applicant's interest is not adequately represented by the existing parties.

*McGough,* 967 F.2d at 1394 (quoting *Orange County v. Air California,* 799 F.2d 535, 537 (9th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987)).

Northrop maintains that the circumstances of the government's motion for leave to intervene for appeal differ from those in *McGough,* because in that case the government was unaware of the proposed settlement until after the district court approved it and ordered the action dismissed. Northrop argues that here the government's motion was not timely because it was aware of the settlement as early as December of 1991 and was informed of the discussions over the ensuing months and failed to intervene during that period. Northrop argues that the government not only delayed intervention until the expiration of lengthy settlement negotiations, but also disregarded a district court order to intervene or consent to dismissal.[1]

■ We review the district court's determination that the motion to intervene was untimely under the abuse of discretion standard. *McGough,* 967 F.2d at 1393–94. In determining whether the motion was timely, we consider three factors:

(1) the stage of the proceeding at which an applicant seeks to intervene;

(2) the prejudice to the other parties; and

(3) the reason for and length of the delay.

*McGough,* 967 F.2d at 1394 (quoting *Air California,* 799 F.2d at 537).

■ Generally, the court will consider a post-judgment motion to intervene to be timely if filed within the time limitations for filing an appeal. *Yniguez v. Arizona,* 939 F.2d 727, 734 (9th Cir.1991). Here, the government promptly filed its motion after the dismissal of the case with prejudice and thus seeks to intervene for purpose of appeal at an appropriate stage of the proceedings, complying with the first factor of the timeliness test.

The consideration of the motion at this point is not unduly prejudicial to the rights of Killingsworth or Northrop, as the passage of time does not significantly worsen their positions. *See United States v. Oregon,* 913 F.2d 576, 588–89 (9th Cir.1990), *cert. denied,* 501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054

---

1. Prior to dismissing the case, the district court had ordered the government either to consent to the dismissal or to file a motion to intervene.

(Tr. of Apr. 20, 1992 Hearing, at 10–11.) The government failed to comply with the district court's order.

(1991). The government thus complies with the second factor of the test.

Finally, the timeliness test requires an acceptable reason for the delay in filing the motion. The government argues it delayed intervening at the district court level because it sought to avoid the burdens of a litigant, such as discovery, and because of possible *res judicata* effects. It maintains it intervened as soon as possible for purpose of appeal.

It is true that the government had the opportunity to intervene before the district court made its ruling adopting the settlement and dismissing the action. Nevertheless, the district court and the parties seemed to presume the government must intervene formally and become a litigant in the action in order to object at that stage. This would explain why the district court, accepting the government's statement that it did not wish to become a party in the action, ruled that the government had no standing to object to the settlement.

■ We now reject the district court's reasoning.[2] The statutory scheme of the False Claims Act provides protection for the rights of both the relator and the government. It is clear, however, that in a *qui tam* action, the government is the real party in interest. *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Ctr.,* 961 F.2d 46, 50 (4th Cir.1992) ("United States is the real party in interest in any False Claims Act suit, even where it permits a *qui tam* relator to pursue the action on its behalf"). Recently, this court cited with approval an interpretation of the Act which permits the government to move for dismissal of some but not all defendants in a *qui tam* action without actually intervening in the case. *United States ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 753 n. 10 (9th Cir.1993) (citing *Juliano v. Federal Asset Disposition Ass'n,* 736 F.Supp. 348 (D.D.C.1990), *aff'd,* 959 F.2d 1101 (D.C.Cir.1992)). Although the issues presented in *Kelly* and *Juliano* differ substantially from those now before us, these cases support the government's right to standing here. As such, we conclude that the government has a right, with or without formal intervention, to ask the court to review a settlement for the purpose of determining whether the provisions of the settlement violate the False Claims Act by improperly allocating to the relator funds which should be paid to the government. See Part IV, *infra.*

■ As the government was denied a proper hearing before the district court and moved to intervene for purpose of appeal as soon as possible, we conclude the district court abused its discretion in finding the government's motion to be untimely. As the instant case is otherwise indistinguishable from *McGough,* we hold that the district court erred in denying the government's motion to intervene in a limited way for the purpose of appeal and we therefore proceed with the merits of the case.

### III.

The government contends the district court erred in dismissing the action without the consent of the Attorney General, in contravention of its absolute right under the Act to block a settlement. The government's concern about the settlement derives from Northrop's agreement to pay Killingsworth $2.7 million to settle his wrongful termination claim and compensate his attorneys. The government argues that the proposed settlement reflects a deliberate attempt by Northrop and Killingsworth to divert money from the False Claims Act claim to Killingsworth's personal claim. The government further contends Northrop's failure to assert a statute of limitations defense to bar Killingsworth's personal claim brings into question the propriety and validity of the settlement. The government asserts that *McGough* gives it an absolute right to block the settlement and argues that under *McGough* and the plain terms of the False Claims Act, *qui tam* actions may not be voluntarily dismissed over the objection of the Attorney General.

---

**2.** We are cognizant of the fact that the statutory scheme at issue here is unique in the law. We also recognize that the precise issue before us now has not yet been adjudicated in the federal courts.

Northrop counters that earlier in the litigation, the government was free to intervene, noting that the district court in fact encouraged the government to intervene and take over the litigation. Northrop maintains that having chosen not to intervene earlier, the government cannot now block the settlement and force Killingsworth to litigate against his will.

The substantive issue in this case—whether the district court erred in dismissing the action without the consent of the government—requires the interpretation of § 3730(b)(1) and is subject to de novo review. *Anderson v. United States,* 966 F.2d 487, 489 (9th Cir.1992). In resolving the difficult and novel question presented by this appeal, we carefully review the provisions of the False Claims Act outlining the interrelationship of the *qui tam* plaintiff and the government.[3]

To place the contested provision in an appropriate context, we first examine the legislative history of the Act. The government's role in a False Claims Act action initiated and pursued by a private party has changed over the years. Under the original statute enacted in 1863, the government had no right to take over an action commenced by a *qui tam* plaintiff. *See* Act of March 2, 1863, ch. 67, 12 Stat. 696; *United States v. Griswold,* 30 F. 762 (C.C.Or.1887). In 1943, the Act was amended to give the government sixty days at the outset of the suit to examine the case and, at its option, proceed with the action within the sixty-day period. *See* Pub.L. No. 78–213, ch. 377, 57 Stat. 608 (1943), (codified at 31 U.S.C.A. § 3730(b)(2)(A) (West 1982)). In 1986, the Act was further amended, giving the government the ability to extend the sixty-day examination period upon a showing of good cause. *See* Pub.L. No. 99–562, 100 Stat. 3154 (1986) (codified at 31 U.S.C.A. § 3730(b)(3) (West Supp.1988)). The amended Act also enabled the government to intervene in the action after the expiration of the sixty-day period upon a showing of good cause. *Id.* at § 3730(c)(3).

■ The legislative history of the 1986 amendments illuminates the reasoning behind these amendments and undermines the government's claim of an absolute right to block a settlement. The Senate Report accompanying the proposed legislation stated that Congress' "overall intent" was "to encourage more private enforcement" of the Act. S.Rep. No. 345, 99th Cong., 2d Sess. 23–24 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5288–89. The amended Act "increases incentives, financial and otherwise, for private individuals to bring suits on behalf of the Government." *Id.* at 2; 5267. In the debate on the House version of the bill, Representative Brooks spoke of enhancing "the ability of the citizen who brings such a suit to follow through with the litigation." 132 Cong.Rec. H6474, H6479 (1986). According to the Senate Report, the new provision permitting intervention after the sixty-day examination period was added to expand the "limited opportunity for Government involvement" and provide the government the option of intervening in "situations where new and significant evidence is found" after the government initially declines to intervene. S.Rep. No. 345, 99th Cong., 2d Sess. 26–27 (1986), *reprinted in* 1986 U.S.C.C.A.N.

---

**3.** Because of the novelty and complexity of the statutory issues in this case, we asked the parties to brief two additional issues not presented by the government or the parties in their briefs on appeal: (1) Assuming 31 U.S.C. § 3730(b)(1) is inapplicable: If the government does not formally intervene, does it have standing to object to the proposed settlement on grounds that the settlement allocates the proceeds among multiple claims in a way that deprives the government of its legitimate share under 31 U.S.C. § 3730(d)(2); and (2) If the government does have standing to object to the proposed settlement, to what extent does the trial court have the power to reallocate the settlement proceeds among the various claims. See Order of this court filed September 22, 1993. Additionally, after the government filed a petition for rehearing following publication of our slip opinion on January 19, 1994, we granted the parties additional oral argument held March 14, 1994, in San Francisco, California.

Responding to question one, the government asserts that it does not have to intervene formally to object to a settlement; Northrop and Killingsworth share the contrary view that the government must intervene formally to object. The government, Northrop, and Killingsworth agree that the district court has no power to reallocate settlement proceeds.

5266, 5291–92.[4] We conclude that Congress' intent to place full responsibility for False Claims Act litigation on private parties, absent early intervention by the government or later intervention for good cause, is fundamentally inconsistent with the asserted "absolute" right of the government to block a settlement and force a private party to continue litigation.

The government cites an express provision of the Act to bar the *qui tam* action from being voluntarily dismissed over the objections of the Attorney General. The government relies on Section 3730(b)(1), which states:

> A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

Section 3730(b)(1), however, has limited application[5] and must be read in conjunction with § 3730(b)(2), which gives the government an election "to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information," and § 3730(c)(3), which provides that the government may intervene "at a later date [after the sixty days] upon a showing of good cause."

■ The term "intervention" as used in § 3730(b)(2) is accompanied by the phrase "and proceed with the action" and thus the intervention refers to the government's privilege of interceding and becoming a litigant in the action within the sixty days. Here, the government has declined to intervene for the purpose of proceeding with the action. Its appeal expressly states it is objecting to the settlement but does not contemplate taking over or participating in any action should the settlement fail to materialize.

The language in the statute requiring both the government and the court to consent to a dismissal came from the initial *qui tam* statute of 1863. The format and intent of the amended statute, however, do not preserve the government's absolute right to bar a dismissal without intervention except during the first sixty days plus any extension granted after the private person has filed a *qui tam* complaint. Section 3730(b) must be read as a whole. The private person bringing the action must provide full information to the government while the complaint is held in camera under seal for at least sixty days. During this time period, the government may elect to intervene and proceed with the action. § 3730(b)(2). The government for good cause may seek an extension of the sixty-day period while the action remains sealed. § 3730(b)(3). Finally, before the end of the sixty-day period or any extensions, the government shall either proceed with the action or notify the court that it declines to take over the action. § 3730(b)(4). In the latter case the private person bringing the action shall have the right to conduct the action. § 3730(c)(3).

■ Thus, the consent provision contained in § 3730(b)(1) applies only during the initial sixty-day (or extended) period. Of course, if the government for good cause exercises its right to intervene at a later date, *see* § 3730(c)(2)(D)(3), its ability to control the litigation arises from its posture as an intervenor.

Further, the government's argument—that without intervention it possesses an absolute right to reject a proposed settlement at any time and for any reason—must be rejected as contradictory to the express language of § 3730(b)(4)(B), which gives the *qui tam* plaintiff "the right to conduct the action." The right to conduct a *qui tam* action obviously includes the right to negotiate a settlement in that action. Section 3730(d)(2), which provides for the proper allocation of *qui tam* proceeds, confirms the relator's

---

**4.** This court reviewed the operative provisions of the Act in *United States ex rel. Kelly v. Boeing Company,* 9 F.3d 743 (9th Cir.1993).

**5.** In some circumstances, the government's consent to a dismissal is not required. These situations include court-ordered dismissals and other involuntary dismissals. *See Minotti v. Lensink,* 895 F.2d 100 (2d Cir.1990) and *United States ex rel. Laughlin v. Eicher,* 56 F.Supp. 972 (D.D.C. 1944).

right to settle the action if the government declines to intervene: "If the Government does not proceed with an action under this section, the person bringing the action *or settling the claim* shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages." § 3730(d)(2) (emphasis added).

Finally, the government's assertion of an absolute right to block a settlement and dismissal by withholding its consent may represent a meaningless privilege in terms of present-day *qui tam* litigation. Here neither the government nor the relator desires to engage in further litigation. If the parties settle the action without a dismissal and thereby effectively stop litigating the case, the trial court would undoubtedly dismiss the suit for failure to prosecute.[6] *See* cases cited, *supra,* n. 5. Conversely, the government may not force Killingsworth and Northrop to continue litigation by refusing to consent to a settlement. *See United States ex rel. Truong v. Northrop Corp.,* 728 F.Supp. 615, 622 (C.D.Cal.1989); *United States ex rel. Stillwell v. Hughes Helicopters, Inc.,* 714 F.Supp. 1084, 1093 (C.D.Cal.1989).

■■■ Additionally, the government relies on *McGough,* 967 F.2d 1391, to support its alleged right to block any settlement. We held in *McGough* that the government's initial decision not to intervene was not equivalent to a consent to dismissal. *Id.* at 1397. Here, in contrast, we address a question not raised in *McGough* and hold that the government's consent to dismissal is only required during the initial sixty-day (or extended) period in which the government may decide whether to intervene. Moreover, in *McGough,* the government received no notice of the settlement and thus had no opportunity to intervene or object to the settlement. *McGough* cannot be construed to give the government an absolute right to bar a proper settlement where it has had notice of that

settlement and where it has declined to take any action.

Thus, we reject the government's construction of the consent to dismissal language of § 3730(b)(1).

## IV.

■■■ In addition to attempting to bar the settlement, the government also requested "a chance to be heard on the merits of this issue." (Tr. of Apr. 20, 1992 Hearing, at 8.) The district court essentially denied the government the opportunity to be heard, noting its impression that "the government actually has no standing any longer." (*Id.* at 9.) We assume the district court's impression was based on an interpretation of the Act under which, to raise any objection to the settlement at all, the government was required to intervene formally and take over the litigation. After carefully reviewing the language, history and purpose of the False Claims Act, we must reject the district court's analysis. The government, although it chooses not to fully intervene in the action, retains the right, upon a showing of good cause, to object to a proposed settlement. This right emerges from our interpretation of relevant sections of the Act.

■■■ The False Claims Act does not specifically address the government's rights when a *qui tam* plaintiff and defendant arrive at a settlement. The Act, however, does cover the converse situation in which the government settles an action. 31 U.S.C. § 3730(c)(2)(B) states:

The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. Upon a showing of good cause, such hearing may be held in camera.[7]

6. This result would almost certainly occur in *United States ex rel. Gibeault v. Texas Instruments,* 25 F.3d 725 (9th Cir.1994), decided contemporaneously with this case. In that case the sole remaining issue concerned the amount of attorney's fees to be paid plaintiff's counsel. Obviously plaintiff will not proceed with litigation

regardless of our resolution of the question relating to the government's asserted right to block the settlement by refusing to consent to the dismissal.

7. In *Kelly,* we stated that on objection by a *qui tam* plaintiff to a settlement proposed by the

The Act also recognizes that a *qui tam* plaintiff can settle a claim when the government does not proceed with an action. Section 3730(d)(2) states:

> If the Government does not proceed with an action under this section, the person bringing the action or *settling the claim* shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. (emphasis added)

Section 3730(d)(3) gives the court the power, under certain circumstances, to reduce the share of the proceeds of the action that the *qui tam* plaintiff would otherwise receive:

> Whether or not the Government proceeds with the action, if the court finds that the action was brought by a person who planned and initiated the violation of section 3729 upon which the action was brought, then the court may, to the extent the court considers appropriate, reduce the share of the proceeds of the action which the person would otherwise receive....

These sections indicate that the district court plays an important role in allocating the proceeds of a settlement by determining the amount to be received by the *qui tam* plaintiff within the overall limitation of no more than 30% of those proceeds (or the 10% limitation under specific circumstances where the relator's source of information comes from public sources). *See* § 3730(d).

▉▉▉▉ We construe the Act as authorizing the district court to bar a *qui tam* plaintiff and defendant from artificially structuring a settlement to deny the government its proper share of the settlement proceeds. We hold the Act grants the district court the power to ensure that the government will receive its proper share of the settlement as provided by statute. Thus, while the government may not obstruct the settlement and force a *qui tam* plaintiff to continue litiga-

tion, the government nevertheless may question the settlement for good cause, as it sought to do in this case, with or without formal intervention and without proceeding with the litigation under § 3730(b)(2) or (c)(3).

In *Juliano v. Federal Asset Disposition Ass'n*, 736 F.Supp. 348 (D.D.C.1990), *aff'd*, 959 F.2d 1101 (D.C.Cir.1992), the court faced a similar "all or nothing" contention by the *qui tam* relator in objecting to the government's partial involvement in a case in which the government moved to dismiss some but not all defendants. The court stated:

> Under our federal scheme, the Attorney General, through those acting in his name, decides whom to prosecute for violations of federal law. The Court will not assume that the *qui tam* provisions of the False Claims Act were intended to curtail the prosecutorial discretion of the Attorney General. The Act nowhere states that federal prosecutors are confined to proceed in an all or nothing manner, being forced to take or leave the *qui tam* plaintiff's charges wholesale. Nor does the Act state that the *qui tam* plaintiff remains free to prosecute any person or entity he wishes, provided the government declines to take over the action. With these considerations in mind, the Court concludes that the government's motion to dismiss certain named defendants is entirely proper.

*Id.* at 351. We think it important that this circuit has cited this discussion of limited intervention in *Juliano* with approval. *Kelly*, 9 F.3d at 753 n. 10.

▉▉▉▉ Under section 3730(c)(3), the government's right to intervene at a late date requires a "showing of good cause." This procedure is detailed in *Kelly*:

> Several of the control mechanisms built into the *qui tam* provisions are qualified. For example, the government ... must show 'good cause' in order to intervene in an action which has already commenced. *Id.* § 3730(c)(3).

government and a defendant, a hearing should be conducted only if the *qui tam* relator shows a "substantial and particularized need" for one. *Kelly*, 9 F.3d at 753–54 n. 11. We further stated

that such a showing could be made if the relator presents a colorable claim that the government-authorized settlement or dismissal is unreasonable in light of the existing evidence. *Id.*

*Id.* at 753–54. We hold that the "good cause" language should also apply to the limited intervention sought here by the government. *See Juliano,* 736 F.Supp. at 351. As noted earlier, § 3730(c)(2)(B) of the Act authorizes the district court to review a settlement, on objection of the relator, to determine whether it is fair and reasonable. We now interpret the Act to provide a similar opportunity to the government; that is, when the government objects with good cause to a proposed settlement, it has a right to a hearing, as would an objecting relator under § 3730(c)(2)(B).

Here, the government's objections to the proposed Killingsworth–Northrop settlement rest on good cause. The circumstance that the *qui tam* plaintiff will receive $2.7 million in settlement of his personal claim and attorney's fees in the face of a possible statute of limitations defense presents the issue whether the total proceeds of the settlement have been fairly allocated so as to give the government its due.[8]

Therefore, on remand the district court should hold a hearing to determine whether the proposed settlement fairly and reasonably allocates the settlement funds. If the district court approves the settlement, it may dismiss the case. On the other hand, if the district court finds that the amount to be paid to Killingsworth and his counsel is not a fair appraisal of the value of his case and services rendered by his counsel, it may disapprove the settlement as structured. In the latter instance, the parties are entitled to continue with the litigation.

Accordingly, we vacate the dismissal of the action and REVERSE AND REMAND this case for further proceedings consistent with this opinion.

8. We do not intend to express our view on the · merits of this inquiry, however.