UNITED STATES of America, ex rel., Appellant,

Roland Gibeault; Inge Maudal, Plaintiffs–Appellees,

v.

TEXAS INSTRUMENTS CORP., a Delaware corporation, et al., Defendants–Appellees.

No. 92–55760.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 1993.

Argued and Submitted on Petition for Rehearing March 14, 1994.

Opinion Filed January 19, 1994.

Opinion Withdrawn May 23, 1994.

Decided May 23, 1994.

---

8. We do not intend to express our view on the merits of this inquiry, however.

Douglas Letter, U.S. Dept. of Justice, Washington, DC, for appellant.

Greg K. Hafif (argued) and Phillip E. Benson (on the brief), Law Offices of Herbert Hafif, Claremont, CA, for plaintiffs-appellees.

William McD. Miller, III, Musick, Peeler & Garrett, Los Angeles, CA, for defendants-appellees.

Before: BROWNING, BRIGHT * and TANG, Circuit Judges.

## ORDER

The petition for rehearing filed February 2, 1994, is granted. Upon hearing further oral argument and examining supplementary briefs and other materials, the prior opinion of this court filed January 19, 1994, is withdrawn. A revised opinion is attached to this order and is filed as the opinion of this court in this case.

---

## OPINION

BRIGHT, Senior Circuit Judge:

In October of 1989, Roland Gibeault and Inge Maudal brought a *qui tam* action against Texas Instruments [T.I.], alleging it defrauded the United States by making false claims under a contract with the United States Navy. Throughout the course of the litigation, the United States declined to intervene under §§ 3730(b)(2) and (c)(3) of the False Claims Act, 31 U.S.C. § 3730 [the Act]. In December of 1992, Gibeault and Maudal reached a settlement agreement with T.I., in which T.I. agreed to pay their counsel $300,-000 in exchange for a dismissal with prejudice and a stipulation that any deficiencies in its products were remedied to the government's satisfaction. The Attorney General objected to the settlement, but did not seek to intervene in the action. The district court held a hearing on the settlement. The district court ruled the government lacked standing to object if it did not intervene and then dismissed the case with prejudice. The United States moved to intervene for purpose of appeal, seeking to challenge the stipulated dismissal. The district court denied the motion. The United States appeals, contending the district court erred in dismissing the action without the consent of the government and in denying the government the right to intervene on appeal. We vacate the dismissal and remand for further proceedings consistent with this opinion.[1]

## I.

In the late 1980s, investigators discovered a conspiracy among defense contractors to defraud the United States Navy by misrepresenting tests and inspections of pressure transducers for the HARM missile. The government prosecuted and convicted Genisco Technology Corp. and three Genisco executives for criminal fraud.

In 1988, Roland Gibeault, a former Genisco employee, filed an action under the *qui tam* provisions of the False Claims Act, 31 U.S.C.

---

* Honorable Myron H. Bright, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. This case and *United States ex rel. Killingsworth v. Northrop Corporation*, 25 F.3d 715 (9th Cir. 1994), received contemporaneous briefing and argument.

§ 3730, against Genisco and three defense contractors, including T.I., seeking civil damages for the fraud relating to the pressure transducers. As provided by the Act, the complaint remained under seal and the government reviewed the case. The government decided to intervene as to Genisco, and settled for $725,000. Neither the government nor Gibeault served the remaining defendants, and in October of 1989, they were dismissed. The government formally consented to the dismissal.

The same month as the dismissal, Gibeault and Inge Maudal, an engineer for a competitor of T.I., filed a second *qui tam* action, the subject of the instant case, against T.I.[2] The allegations in this action are essentially the same as in the earlier action filed in 1988. After investigating the allegations for ten months, the government informed Gibeault and Maudal it would not exercise its right under the Act to take over the litigation.

T.I. was served with the complaint in September of 1990. During 1991, the parties engaged in discovery and began discussing the possibility of settlement. In October of 1991, T.I. raised a prior administrative settlement with the Navy, finalized in January of 1991, as an affirmative defense. Separate from the *qui tam* action, and unbeknownst to Gibeault and Maudal, T.I. and the Navy had executed a contract modification in which T.I. agreed to compensate the Navy for expenses resulting from the defective pressure transducers.

In December of 1991, after learning of the administrative settlement, Gibeault and Maudal negotiated a settlement in which T.I. was to pay their attorneys $300,000, in exchange for a dismissal with prejudice and a stipulation that:

> any deficiencies in the [Genisco pressure transducers] or any other portion of the HARM guidance and control system, and resultant impact on HARM missile performance, if any, have now been remedied by

T.I. to the satisfaction of the United States Government, in particular the Navy....

(Stipulation for Order Dismissing Action filed Mar. 17, 1992, at 2.)

The government expressed four concerns about the proposed settlement: (1) whether the attorneys' fees were in reality compensatory payments subject to the allocation provision of § 3730(d)(2) of the False Claims Act; (2) whether the dismissal should be without prejudice; (3) whether the dismissal should expressly prohibit T.I. from recouping its fees and expenses as overhead on government contracts; and (4) whether the dismissal should include the stipulation, unauthorized by the government, that states the deficiencies were remedied to the government's satisfaction. The government, however, still declined to intervene in the action.[3]

The district court held a hearing on March 16, 1992 and ruled that because the government did not seek to intervene in the case, the Attorney General could not object to the stipulated dismissal. On March 17, 1992, the district court dismissed the action with prejudice.

On April 9, 1992, the government filed a motion seeking leave to intervene for purpose of appeal, which the district court denied on May 12, 1992. The government filed this timely appeal.

## II.

■ The government first contends that the district court erred in holding untimely its motion to intervene for purpose of appeal. We resolved this issue in *United States ex rel. Killingsworth v. Northrop Corporation,* 25 F.3d 715 (9th Cir.1994), the companion to this case. There we held the government may intervene for purpose of appeal. Our decision in *Killingsworth* controls this case, and, consequently, the government may intervene here.

2. The action originally included other named defendants who eventually were voluntarily dismissed from the action.

3. The provision relating to deficiencies quoted in the text on its face appears to be a gratuitous and an unauthorized statement, not binding on the United States. However, we do not decide that issue in this appeal.

## III.

 The government's substantive contention is that the district court erred in dismissing the action without its consent. The government objects to the settlement on different grounds than in *Killingsworth*. First, the government claims the $300,000 payment for attorneys' fees is really a settlement under the False Claims Act that is structured as attorneys' fees. Such an allocation of the settlement proceeds would contravene the requirements of § 3730(d)(2), which guarantees the government a substantial portion of any False Claims Act settlement. Second, the government objects to a dismissal with prejudice to the United States. Third, the government criticizes the proposed settlement because it fails to bar T.I. from passing on the cost of the settlement to the United States through overhead charges on government contracts. Finally, the government objects to the stipulation, which provides that the deficiencies in the pressure transducers have been remedied to its satisfaction.

Following *Killingsworth*, we hold the government may not both withhold its consent to the settlement and refuse to intervene, thus forcing Gibeault and Maudal to continue litigating. Nevertheless, under *Killingsworth*, the government, on a showing of "good cause," is entitled to a hearing before the district court. In this case, the district court rejected the government's objection to the dismissal for lack of standing. Thus, the question of good cause remains.

Our examination of the underlying record in this case indicates that the government has not received any answer to its inquiry whether the *qui tam* plaintiff has or will personally receive any part of the $300,000 to be paid by Texas Instruments in settlement. Thus, the government has a genuine concern as to whether the amount labelled attorney's fees actually represents in part a payment to the *qui tam* plaintiff. The other matters relating to the settlement which the government questions may very well have been taken into consideration in setting the settlement amount. Therefore, under § 3730(d), the entire settlement arrangement may be subject to review.

The government has shown good cause to obtain a hearing on its objections to the settlement, similar to the hearing ordered in the companion *Killingsworth* litigation. Upon hearing the government's objections, the district court shall either approve the settlement and dismiss the action, or reject the settlement and permit the parties to proceed with this *qui tam* action.

Accordingly, we VACATE the dismissal and REMAND this action for further proceedings consistent with this opinion.