UNITED STATES, ex rel. Ramesh C. SHARMA, Plaintiff–Appellant,

v.

UNIVERSITY OF SOUTHERN CALIFORNIA, Defendant–Appellee.

No. 98–56020

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 2000

Submission Deferred Feb. 22, 2000[1]

Resubmitted June 29, 2000

Filed July 10, 2000

---

1. The panel deferred submission of this case pending the Supreme Court's resolution of *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* — U.S. —, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). There, the Supreme Court held that qui tam plaintiffs may bring False Claims Act cases, allowing Sharma's claim to proceed.

Armando M. Galvan, Los Angeles, California, for the plaintiff-appellant.

Robert C. Bonner, Gibson, Dunn & Crutcher, Los Angeles, California, for the defendant-appellee.

David M. Gossett, U.S. Department of Justice, for the plaintiff-appellant.

Before: BROWNING, GOODWIN, and GRABER, Circuit Judges.

GOODWIN, Circuit Judge:

Plaintiff Ramesh Sharma ("Sharma") appeals the district court's order modifying the terms of his settlement agreement (the "Settlement Agreement" or the "Agreement") in Sharma's qui tam action against the University of Southern California ("USC") under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3731.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Dr. Ramesh Sharma brought a qui tam action against USC under the FCA, alleging that USC had made false representations to the United States ("U.S.") in connection with research funded by the National Institutes of Health. The U.S. elected not to intervene in the case, but later objected to the calculation of Sharma's recovery in the Settlement Agreement that he reached with USC. The government disputed the inclusion of attorneys' fees as part of the "proceeds" of the settlement to which Sharma was entitled. The trial court agreed with the government that, as a matter of law, the statute did not include attorneys' fees in "proceeds." The court held that the proceeds were the amount over and above attorneys' fees and costs. Rather than disapprove the Settlement Agreement, however, the court opted to modify it—to reduce Sharma's recovery in accordance with the statute—and approve it.

Sharma claims, however, that the district court erred in modifying, and then approving, the Settlement Agreement. The terms of the Agreement provide that the approval of the district court is a condition to its enforceability and that disapproval or any alteration of the terms of the Agreement renders it null and void. Sharma contends that the trial court thus had only two options at its disposal: either (1) approve the Settlement Agreement as submitted, after which the parties dismiss

their claims, or (2) disapprove the Settlement Agreement, after which the parties continue litigating the dispute. Sharma contends that Ninth Circuit precedent does not allow the court the third option of changing an agreement that by its very terms becomes void if modified, and simultaneously ordering the dismissal of the case involved.

## STANDARD OF REVIEW

■ The district court's decision to modify and approve the Settlement Agreement to bring it into compliance with the FCA is a matter of law reviewed *de novo. See United States v. Gonzalez–Mendez,* 150 F.3d 1058, 1060 (9th Cir.1998), *cert. denied,* 525 U.S. 1010, 119 S.Ct. 528, 142 L.Ed.2d 439 (1998).

## DISCUSSION

■ Sharma contends that the express terms of the Settlement Agreement prevented the district court from altering and then approving it. The Agreement states, "if the Court does not approve, or [if] the Court for any other reason declines to enter a dismissal with prejudice of the Qui Tam Lawsuit, this Agreement shall be null and void, and USC shall pay nothing to the Sharmas and/or the United States." Although we are troubled by the prospect of a court's modifying and approving a settlement agreement without both parties' subsequent consent, a district court does have the power in FCA qui tam cases to bring a settlement into compliance with FCA.

The FCA provides that the district court must approve a proposed settlement in a qui tam case (in which a party sues on behalf of the government), and the parties recognized as much by providing that the court's approval was a condition precedent

to the enforceability of the Agreement. Upon being presented with the Settlement Agreement,[2] the court ruled that the inclusion of attorneys' fees in the proceeds payable to Sharma violated the provisions of the FCA. The statute provides that a relator may receive "not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person *shall also receive* an amount for reasonable expenses ..., plus reasonable attorneys' fees and costs. *All such expenses, fees, and costs shall be awarded against the defendant.*" 31 U.S.C. § 3730(d)(2) (emphasis added).

■ Sharma claims that "proceeds" encompasses the entire amount brought in, and not just damages recoverable by the plaintiff. However, the U.S. intervened to argue, and the district court agreed, that attorneys' fees are not allowable to inflate the recovery of the plaintiff's "proceeds" under the FCA. This position is logical, because the statute explicitly separates proceeds from attorneys' fees and costs by providing that a plaintiff "shall also receive an amount for reasonable expenses ... plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(2). In this manner, the FCA requires attorneys' fees and costs to be "awarded against the defendant, rather than taken out of the proceeds" of the FCA recovery. *United States ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 747 (9th Cir.1993); 31 U.S.C. § 3730(f) (providing that the government is not liable for a plaintiff's expenses in bringing a qui tam action). Furthermore, Ninth Circuit law makes it clear that, "[i]n the qui tam arena, ... attorneys' fees must go to the attorneys rather than to the plaintiff. If

---

**2.** The Settlement Agreement between Sharma and USC originally provided for a total payment of $650,000, of which $250,000 was allocated to settlement of the FCA suit and $400,000 to settlement of Sharma's non-qui tam retaliation claim. Sharma claims that his share of the "proceeds" from the settlement should be calculated as 30 percent of the total sum allocated to the FCA charge (i.e., 30 percent of $250,000, or $75,000–which includes attorneys' fees as part of the proceeds). The government had no quarrel with the 30 percent figure, but argued that the FCA requires that the "proceeds" of the settlement is the amount *in excess* of attorneys' fees and costs, which would leave Sharma's award as 30 percent of $166,885.47, or $50,065.64.

they did not, a wrong would be perpetrated upon the government.... If the amount went to the plaintiff, it would be a compensatory payment which really belongs to the United States subject to allocation of a portion to the plaintiff." *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*, 89 F.3d 574, 578 (9th Cir.1996); *see also United States ex rel. Gibeault v. Texas Instruments Corp.*, 104 F.3d 276, 277 (9th Cir.1997).

■ The Settlement Agreement here, however, was structured so that in addition to the 30 percent of the FCA recovery to which Sharma was entitled, he received as a bounty his costs and attorneys' fees from the FCA proceeds. District courts have the power to modify FCA settlements that stray from the statutory requirements "to ensure that the government [receives] its proper share." *Gibeault*, 104 F.3d at 277 (internal quotation marks and citation omitted). The court may even affirmatively "restructure the settlement" to "bar a qui tam plaintiff and defendant from artificially structuring a settlement to deny the government its proper share." *Id.* (internal quotation marks and citation omitted). Here, the original Settlement Agreement attempted to do just that, in that it provided for both Sharma's personal non-qui tam claims and the FCA recovery, but not for his attorneys' fees separately. Instead, Sharma attempted to receive both his statutory 30 percent recovery *and* his attorneys' fees from the total FCA recovery, thereby denying the U.S. its statutorily mandated share by taxing a portion of the attorneys' fees against the government's award. Hence, the trial court was not only authorized, but required to, modify the Agreement to reduce the recovery allocated to Sharma to reflect the separation of attorneys' fees from the proceeds. *See id.* ("court had the power to restructure the settlement to secure government's share"); *Virani*, 89 F.3d at 578. This alteration reduced Sharma's portion of the recovery to approximately $50,000 in the qui tam FCA action instead of $75,000; Sharma was still entitled to be paid an additional $400,000 attributable to his non-qui tam wrongful termination claims.

■ Sharma further contends that the district court erred by reducing his FCA award because the Settlement Agreement provided that "if the Court does not approve, ... this Agreement shall be null and void." In addition, the Agreement stated that it was subject to the express "condition subsequent of the Court's approval of the settlement of the Qui Tam Lawsuit on the terms set forth herein."

■ It is an established principle of California contract law that contracts are to be interpreted according to the objective intent of the parties. *See Beck v. American Health Group International, Inc.*, 211 Cal.App.3d 1555, 260 Cal.Rptr. 237, 242 (Cal.App.1989); Cal. Civ.Code § 1636. By failing to give effect to the express "null and void" and "condition subsequent" language, Sharma maintains that the district court committed reversible error. He cites *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 725 (9th Cir. 1994), for the proposition that the court had only two options when presented with the Settlement Agreement: either (1) approve it as submitted, after which the parties dismiss their claims, or (2) disapprove the Settlement Agreement, after which the parties continue litigating the dispute. Sharma argues that it would violate his expectations and condone "shoving a settlement down his throat" for the court to alter, but still approve, an agreement the parties expressly stated would become null and void if modified.

USC responds that the district court did not invalidate the Settlement Agreement by modifying it in accordance with the FCA. Contrary to Sharma's reading of *Killingsworth*, USC points out that the Ninth Circuit held there that "the court [may] review a settlement for the purpose of determining whether the provisions of the settlement violate the False Claims Act by improperly allocating to the relator funds which should be paid to the govern-

ment." *Id.* at 720. As mentioned above, the trial court is further empowered by the FCA to "reduce the share of the proceeds of the action" that the qui tam plaintiff would otherwise receive. *Id.* at 724; 31 U.S.C. § 3730(d)(3).[3] In addition, the *Killingsworth* court noted that "the district court plays an important role in allocating the proceeds of a settlement by determining the amount to be received by the qui tam plaintiff within the overall limitation [of the FCA]." 25 F.3d at 724.

■ In accordance with its power, the district court held that the FCA did not permit the size of the award granted to Sharma, and the court exercised its discretion to reduce his share to bring the Settlement Agreement into compliance with the FCA without invalidating it. The Agreement itself included a severability clause, which provided that should any provision of the Agreement be found invalid, "all remaining parts, terms or provisions shall be valid, and the illegal or invalid part ... shall be deemed not to be a part of [the] Agreement." Thus, the parties specifically recognized the possibility that a court might view parts of the Agreement to be void without thereby negating the entire settlement. Although the trial court originally "assumed that [any modification] would invalidate the settlement and the parties would have to go back to the drawing board," it changed its view after discovering the Ninth Circuit's rule in *Killingsworth*. Moreover, the Settlement Agreement provided that the "district court would determine the relator's share *in accordance with the FCA*" and that Sharma "*should* (i.e., not 'must') receive 30 percent of the amount so allocated, pursuant to 31 U.S.C. § 3730." (Emphasis added.) Thus, the parties contemplated that the FCA governed the amount payable under their Settlement Agreement, and they recognized that the district court would determine

Sharma's share of the qui tam recovery in light of the statute. As the Ninth Circuit has held, "ambiguously worded contracts should not be interpreted to render them illegal if a legal construction is plausible." *United States v. Sacramento Mun. Util. Dist.*, 652 F.2d 1341, 1346 (9th Cir.1981). The district court's action, which was designed to comply with the FCA and Ninth Circuit precedent, was consistent with the parties' Settlement Agreement and thus did not serve to render it null and void.

## CONCLUSION

The district court did not err in modifying the parties' Settlement Agreement to bring it into compliance with the FCA.

AFFIRMED.

---

**3.** Title 31 U.S.C. § 3730(d)(3) states that "the court may, to the extent the court considers appropriate, reduce the share of the proceeds of the action which the [qui tam plaintiff] would otherwise receive."