# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES ex rel. LANDIS,**<br><br>Plaintiffs,<br><br>v.<br><br>**TAILWIND SPORTS CORP., et al.,**<br><br>Defendants. | Case No. 1:10-cv-00976 (CRC) |

## MEMORANDUM OPINION AND ORDER

Former professional cyclist Floyd Landis, the relator in this *qui tam* action, wishes to settle his claims against his ex-teammate Lance Armstrong's agents and their company, Capital Sports and Entertainment ("CSE Defendants"). The United States, which has intervened in Landis' claims against Armstrong but not his claims against the CSE Defendants, objects to the proposed settlement on its current terms. The question before the Court is whether Landis and the CSE Defendants may settle those claims over the Government's objection. While it might seem counterintuitive that the Government can effectively veto a settlement of claims it has chosen not to join, the False Claims Act itself and the majority of circuits that have addressed the question say otherwise. Until the United States, through the Attorney General, provides its written consent, the Court may not approve the settlement or order the voluntary dismissal of the CSE Defendants. The Court must therefore deny the CSE Defendants' motion to approve the settlement.

## I.    Background

The False Claims Act ("FCA") permits private citizens to bring actions "in the name of the Government" to enforce its provisions and provides for these "relators" to receive a share of the proceeds of successful actions. 31 U.S.C. § 3730. In June 2010, relator Floyd Landis filed this FCA suit against Lance Armstrong, his former teammate on the U.S. Postal Service-sponsored professional cycling team, and a number of other individuals and entities associated with the team. The suit alleges that the defendants submitted claims for sponsorship payments of more than $40 million to the Postal Service while knowing that members of the team had used performance enhancing drugs in violation of their sponsorship agreement. The United States elected to intervene against Armstrong and certain other defendants in February 2013, but did not intervene against the CSE Defendants. United States' Notice of Election to Intervene in Part at 1. Landis and the CSE Defendants recently reached a settlement agreement. Joint Stipulation of Dismissal Ex. A. The Government, however, has notified the Court that it does not consent to the agreement as written. United States' Notice Regarding the Proposed Settlement Involving the CSE Defendants at 1. The CSE Defendants now move the Court to accept the settlement agreement notwithstanding the Government's objection and dismiss the action against them.

## II.    Analysis

The Supreme Court has repeatedly instructed that "the starting point in any case involving the meaning of a statute[] is the language of the statute itself." Grp. Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 210 (1979) (citing St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 541 (1978)). Courts should "assume that the ordinary meaning of the language that Congress employed 'accurately expresses the legislative purpose.'" Mills Music, Inc. v. Snyder, 469 U.S. 153, 164 (1985) (citing Park 'N Fly Inc. v. Dollar Park and Fly, Inc.,

2

469 U.S. 189, 194 (1985)). Section 3730(b)(1) of the FCA states that an FCA "action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." This requirement is clear, with one wrinkle: in construing this provision, courts have recognized that it pertains only to *voluntary* dismissals so as to avoid the separation of powers concerns that would arise if the Attorney General held the power to reject a judicial decision. See United States ex rel. Conteh v. IKON Office Solutions, Inc., No. CV 12-1074, 2014 WL 1022861 at *1 n.3 (D.D.C. Mar. 18, 2014) (citing United States ex rel. Baggan v. DME Corp., No. 96–1983, 1997 WL 600569, at *3 n.6 (D.D.C. Sept. 22, 1997)); Minotti v. Lensink, 895 F.2d 100, 103–04 (2d Cir. 1990); United States ex rel. Mergent Servs. v. Flaherty, 540 F.3d 89, 91 (2d Cir. 2008)).

Despite the seemingly plain language of Section 3730(b)(1), the CSE Defendants ask the Court to look beyond the literal text and approve the proposed settlement unless the Government can articulate good reasons for withholding its consent. They complain that giving the Government veto power over voluntary settlements infringes on relators' "right to conduct" non-intervened FCA actions and forces relators to press forward with litigation against their will. The CSE Defendants find support for their argument in United States ex rel. Killingsworth v. Northrop Corp., 25 F.3d 715 (9th Cir. 1994), where the Ninth Circuit held that the consent provision in Section 3730(b)(1) applied only during the initial 60-day (or extended) period during which an FCA suit is sealed and that, thereafter, the district court could approve a settlement over the United States' objection after a hearing, id. at 722–23, 725.

Unfortunately for the CSE Defendants, Killingsworth has not fared well in the intervening years. Its conclusion and reasoning have been expressly rejected by both the Fifth and Sixth Circuits. Searcy v. Philips Elecs. N. Am. Corp., 117 F.3d 154, 159–160 (5th Cir.

3

1997) (finding no reason in the text or structure of the FCA to ignore Congress's longstanding instruction "to let the government stand on the sidelines and veto a voluntary settlement"); United States v. Health Possibilities, P.S.C., 207 F.3d 335, 339 (6th Cir. 2000) ("We now join the Fifth Circuit in rejecting the Ninth Circuit's analysis, and hold that a relator may not seek voluntary dismissal of any *qui tam* action without the Attorney General's consent."). And while neither the Supreme Court nor the D.C. Circuit has tackled the question head on, both have indicated that the Government's consent is required for the voluntary dismissal of non-intervened claims. U.S. ex rel. Eisenstein v. City of New York, New York, 556 U.S. 928, 932 (2009) (noting that if the United States decides not to intervene in an FCA case, its rights in the proceeding still include "vetoing a relator's decision to voluntarily dismiss the action"); Hoyte v. Am. Nat. Red Cross, 518 F.3d 61, 63 n.2 (D.C. Cir. 2008) (citing Searcy and Health Possibilities for the principle that "a motion to dismiss by the relator requires the consent of both the Government and the court even in cases where the Government has declined to intervene" (quotation marks omitted)).

While it might seem unfair for the Government to be able to force a relator to continue to litigate non-intervened claims that he would prefer to settle, the broader purposes of the FCA are served, at least to some extent, by a plain reading of Section 3730's consent provision. As the Sixth Circuit observed, "the power to veto a privately negotiated settlement of public claims is a critical aspect of the government's ability to protect the public interest in *qui tam* litigation" because otherwise "the public interest would be largely beholden to the private relator, who—absent 'good cause' government intervention—would retain sole authority to broadly bargain away government claims." Health Possibilities, 207 F.3d at 340–41. Moreover, "the United States is a real party in interest even if it does not control the False Claims Act suit," Searcy, 117

4

F.3d at 156 (citing United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Center, 961 F.2d 46, 48–49 (4th Cir. 1992)), as the "harms redressed by the FCA belong to the government" regardless of who guides the litigation, Health Possibilities, 207 F.3d at 340 (citing United States ex rel. Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1154 (2d Cir. 1993)). The CSE Defendants argue that this case is different because the Government has not identified any aspects of the settlement that would be contrary to the public interest. But neither the statute nor the case law—Killingsworth notwithstanding—obligates the Government to justify its objections. To the contrary, Section 3730(b)(1) requires an explanation from the Government only if it decides to *consent* to a proposed settlement. Fairly or not, withholding of consent requires no explanation.

In sum, the plain meaning of Section 3730(b)(1) and substantial case law interpreting this provision compel the Court to find that it cannot approve a voluntary settlement of an FCA action without the Attorney General's consent.

## III. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the CSE Defendants' Motion for Approval of the Settlement Agreement and Dismissal of the *Qui Tam* Action [ECF No. 302] is DENIED.

**SO ORDERED.**

CHRISTOPHER R. COOPER
United States District Judge

Date: April 9, 2015